993 F.2d 1537
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles E. HURT; Zurich Insurance Company, Appellants,
Orville R. THOMAS; Raymond G. Dodson, Trustee in Bankruptcy
for Capitol Fuels, Incorporated, Plaintiffs-Appellees,
v.
CAPITOL FUELS, INCORPORATED; A. J. Frederick; G. B.
Frederick, Defendants.
Orville R. THOMAS, Plaintiff-Appellant,
v.
Charles E. HURT; Zurich Insurance Company, Defendants-Appellees,
and
A. J. FREDERICK; G. B. Frederick, Defendants.
 Nos. 92-1724, 92-1831.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 3, 1993
Decided: May 26, 1993
 
 Appeals from the United States District Court for the Southern District of West Virginia, at Charleston. Dennis Raymond Knapp, Senior District Judge. (CA-84-2311-2)
 Argued: Charles E. Hurt, Charleston, West Virginia, for Appellants.
 Gerard Ray Stowers, Bowles, Rice, McDavid, Graff & Love, Charleston, West Virginia, for Appellees.
 On Brief: Raymond G. Dodson, Dodson, Riccardi & Lutz, Charleston, West Virginia, for Appellee Capitol Fuels.
 S.D.W.Va.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before RUSSELL and WILKINS, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is the second appeal in the above captioned case and it presents two questions: (1) whether the attorney, employed on a contingent fee basis, who recovered a verdict in a subrogation action, is entitled to an attorney's fee from that portion of the verdict that would have gone to the insured, but for the plaintiff garnishing the insured's share; and (2) whether the district court erred in distributing the proceeds of the subrogation verdict by calculating such distribution using the actual amount of damages found by the jury, and not the value of the equipment claimed in the subrogation suit. We affirm the district court's distribution of the proceeds, but we reverse its denial of an attorney's fee.
 
 I.
 
 2
 On August 6, 1979, an endloader owned by Capitol Fuels ("Capitol") was destroyed by fire while insured by Zurich Insurance Co. ("Zurich"). The loss was paid and Zurich became subrogated to the rights, title and interest of Capitol in the destroyed property. With the approval of Capitol, Zurich retained Charles E. Hurt, Attorney, to bring an action against Clark Equipment Company, the manufacturer of the endloader and Wright-Thomas Equipment Company, which had sold the endloader to Capitol. The subrogation action was filed in the name of Capitol to recover $90,000 for the fire loss. Clark and Wright-Thomas sought to join Zurich as the real party in interest and the complaint was amended seeking $190,000 in damages to cover the alleged loss of both Zurich and Capitol.
 
 
 3
 On October 31, 1986, a verdict in favor of Capitol was returned in the amount of $85,000 plus interest. Prior to said verdict, Orville R. Thomas, the sole stockholder of Wright-Thomas, had dissolved said corporation and then brought action against A. J. and B. J. Frederick and Capitol on an unpaid account and promissory note, and Thomas obtained a verdict of $863,462.50.
 
 
 4
 Thereafter, Thomas brought garnishment proceedings against Capitol claiming a first lien against any sums due Capitol in the subrogation suit. Thomas claimed priority over any subrogation claim of Zurich and over Charles Hurt's claim for attorney's fees. He also challenged a prior holding of the district court, which found that Zurich was entitled to 94 percent of the subrogation recovery and Capitol was entitled to the balance of 6 percent. The district court agreed with Thomas, but we reversed and held that although the action was brought in the name of Capitol, it was for the benefit of Zurich and that the recovery was impressed with a trust for the insurer in the amount it was entitled to receive by principles of subrogation. We remanded the case to the district court for a determination as to how the proceeds should be distributed consistent with our conclusions that Zurich and Hurt were entitled to recover.
 
 
 5
 Upon remand, the district court held that Zurich was entitled to 94 percent of the amount currently on deposit, and that Orville Thomas was entitled to the remaining 6 percent. However, it concluded that Attorney Hurt was entitled to his negotiated fee from Zurich's recovery, but that he was not entitled to a fee from the remainder of the judgment because the insurance policy stated that the insured "will permit suit to be brought in the insured's name under the direction and at the expense of the company," and the court found that "expense" included all attorney's fees incident to the litigation. On appeal Hurt challenges the denial of his fee from the 6 percent going to Thomas, and Thomas cross appeals and challenges the court's allowance of 94 percent of the proceeds currently on deposit to Zurich. He claims that such a division is inequitable and that Zurich should be limited to 42 percent of the funds on deposit. This division is based on the argument that the jury verdict did not fully compensate Capitol for its loss of the equipment, which Capitol alleged to be $190,000; therefore distribution should be calculated as the percentage of Zurich's subrogation claim approximately $80,000, to the total claim. Zurich's claim is 42 percent of the $190,000 claimed in the subrogation action. Therefore, Thomas argues that Zurich should receive only 42 percent of the amount on deposit and Thomas should receive 58 percent.
 
 
 6
 We affirm the district court's decision as to the division-94 percent to Zurich and 6 percent to Thomas, but we reverse as to Attorney Hurt's fee. Hurt is entitled to be paid one-third of the amount going to both Zurich and Thomas.
 
 II.
 In our prior opinion, we held:
 
 7
 It was perfectly well known to all parties concerned that the action was being prosecuted by Zurich in the name of Capitol Fuels to recover the value of the property lost in the fire, and that such action was on behalf of itself and Capitol Fuels. Though the action was prosecuted in the name of Capitol Fuels, it was clear the majority of the recovery was for the benefit of Zurich and that the "recovery is impressed with a trust for the insurer [reinsurer] in the amount it was [they were] entitled to receive by principles of subrogation."
 
 
 8
 This recovery was also impressed with an attorney's charging lien in favor of Attorney Hurt, who, through his legal services, obtained the verdict.
 
 
 9
 Thomas argues that there must be a valid contract, either express or implied, between the attorney and the client before the attorney may impress his fee upon the entire proceeds and that there was no such contract between Hurt and Capitol. This argument conflicts with the law of the case, because we found in our prior opinion, "Zurich, with the agreement of Capitol Fuels, retained Hurt to represent the interest of Zurich and Capitol Fuels in an action against Clark Equipment and Wright-Thomas." This finding is supported by the affidavits of officials of both Zurich and Capitol that Hurt was employed to bring the subrogation action on a contingent fee of one-third of the amount of any judgment and any interest that might accrue thereon. This was a valid contract for legal services in keeping with common practice among attorneys and clients in subrogation cases.
 
 
 10
 Thomas stands in the shoes of Capitol, and he may not change the fee agreement between Capitol and Attorney Hurt as to the payment of Hurt's fee from the verdict obtained as the result of his services.
 
 
 11
 There is no merit to the claim that the policy language covering subrogation made all attorneys' fees the expense of the insurance company. This section of the policy reads:
 
 
 12
 Subrogation or Loan. If in the event of loss or damage the Insured shall acquire any right of action against any individual, firm or corporation for loss of, or damage to, property covered hereunder, the Insured will, if requested by the Company, assign and transfer such claim or right of action to the Company or, at the Company's option, execute and deliver to the Company the customary form of loan receipt upon receiving an advance of funds in respect to the loss or damage; and will subrogate the Company to, or will hold in trust for the Company, all such rights of action to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name under the direction of and at the expense of the Company. (Emphasis added).
 
 
 13
 Zurich bore the expense of preparing and litigating the case including all filing fees, witness fees, etc., but no attorney's fees have yet been paid by either Zurich or its insured to Attorney Hurt, because the attorney was working on a contingent fee basis and the recovery has not been distributed. The attorney remains unpaid even though the matter has been in litigation for more than a decade.
 
 
 14
 The agreement among Zurich, Capitol and Hurt is clear and unequivocal-the contingent attorney's fee of one-third of any recovery was to be paid by Zurich and by Capitol to Hurt. Since the agreement as to attorney's fees is clear, it is unnecessary for us to decide whether "at the expense of the company" as it appears in the insurance policy, means all attorney's fee are paid by the insurer.
 
 III.
 
 15
 There is no merit to Thomas' claim that the distribution of the funds should be based upon the claimed value of the damaged endloader, as alleged in the amended complaint, rather than on the actual amount of damages found by the jury. The complaint originally sought only the amount of the fire loss, but the ad damnum was increased to cover any other claims of Capitol after a motion had been made to have Zurich joined as a necessary party to the suit. The jury verdict in this subrogation action decided the amount necessary to make Capitol whole as the result of the damage to its equipment. This amount was slightly more than Zurich had paid, and this difference resulted in the division of the recovery with only 94 percent going to Zurich. Under the insurance contract, Zurich, as insurer, is entitled to recover what it paid to Capitol for the fire damage, and Zurich's recovery is not controlled by the ad damnum of the complaint or the testimony as to value at trial. The exact amount was proved by the payment made to Capitol by Zurich to cover the loss and this represented 94 percent of the jury verdict. Therefore, the division established by the district court is affirmed.
 
 
 16
 The judgment of the district court as to Attorney Hurt's fee is reversed and said attorney shall be paid his one-third contingent fee out of the total amount being held for distribution. The judgment of the district court as to the division of the funds-94 percent to Zurich and 6 percent to Thomas-is affirmed.
 
 
 17
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS
 
 
 18
 WILKINS, Circuit Judge, concurring in part and dissenting in part:
 
 
 19
 I agree with the majority that the district court properly distributed the proceeds of the verdict. I also agree that Hurt, as the attorney representing the interests of Capitol and Zurich during the subrogation litigation against the third-party tortfeasor, is entitled to a fee of one-third of the total verdict obtained. I disagree, however, with the majority concerning which party is responsible for paying this fee.
 
 
 20
 The insurance contract between Zurich and Capitol provided that Capitol would assign any claim or right of action acquired as a result of a loss to Zurich and would "permit suit to be brought in [its] name under the direction of and at the expense of" Zurich. I read this language as plainly setting forth the parties' understanding that Zurich would fund any litigation expenses, including an attorney's fee, that arose out of litigation against a third-party tortfeasor responsible for the loss. The evidence before the district court demonstrated that Zurich employed Hurt to represent its interests and those of Capitol, and that Zurich agreed to pay Hurt one-third of any verdict obtained from the subrogation litigation. Importantly, while it consented to the selection by Zurich of Hurt as the attorney, Capitol did not agree to amend its prior agreement that Zurich would fund the litigation expenses. Although equitable principles may require that one who benefits from an attorney's services pay a reasonable attorney's fee, see Security Nat'l Bank & Trust Co. v. Willim, 180 S.E.2d 46, 52-53 (W. Va. 1971), the parties here, by express agreement, have structured their responsibilities. The insurance contract provided that Zurich-not Capitol-would pay Hurt. Thus, while I agree that Hurt should recover one-third of the total, I believe that Zurich should fund the entire fee from its share of the proceeds.